UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ORLANDO JAMES,

    Plaintiff,

v.                                                  Case No. 2:07-cv-235
                                                  HON. ROBERT HOLMES BELL

A.D.W. JONDREAU, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff Orlando James filed this prisoner 42 U.S.C. § 1983 action against defendants ADW Jondreau, RUO Vertanen, RUO Lampela, RUO Marti, RUO Kertu, Sgt. Curtis, ARUS LeClaire, Deputy Warden L. Tribley, RUM Sackett, Ann Morin, CRN and Corrections Officer Borgen. Plaintiff claims that defendants used excessive force to restrain him at Alger Maximum Correctional Facility.

        Plaintiff's Second Amended Complaint states:

        On 4-26-07 at or around 4:00pm/4:30 pm this plaintiff was subjected to physical abuse (an assault) by the following employees (working in housing unit 2 segregation) during inmate shower time, on c-wing: RUO Vertanen, RUO Lampella, C/O Kertu, Sgt Curtis; while under supervision and consent of ADW Jondreau and ARUS LeClaire these officers while escorting plaintiff in the shower, physically choked, kneed, punched and mishandled this plaintiff with the intent to harm this plaintiff physically for not handing over his soap dish and face towel, while in the c-wing shower stall. The plaintiff was physically restrained in handcuffs the whole time. These allegations were brought before this administration through the grievance system at all three steps and fully exhausted.

        Plaintiff asks for damages of $125,000 for physical and emotional distress. Plaintiff requests that defendants receive suspension from employment. Plaintiff also requests a transfer to a new prison. Plaintiff is now housed at the Marquette Branch Prison.

Defendants explain what occurred on April 26, 2007, from a slightly different perspective. Defendant Vertanen and defendant Martan were conducting shower escorts for administration segregation prisoners. It is normal procedure to conduct a shakedown or search of the inmate to look for contraband items that a prisoner may attempt to take to the shower. Defendant Vertanen asked plaintiff for a shakedown of his towel and washcloth during the escort. Plaintiff claimed that he only was carrying soap. Plaintiff was taken to the shower and secured. Defendant Vertanen again asked for plaintiff to provide his towel and washcloth. Plaintiff refused. Defendant Curtis was called to the unit and ordered plaintiff to comply with the order. Plaintiff refused. Defendant Lampela and defendant Kerttu came over to the area to assist in restraining plaintiff to retrieve the washcloth and towel. Defendant Curtis told plaintiff that if he refused to comply with the order, staff would have to take the items from him. Plaintiff responded: "Do what you gotta do."

Defendant Curtis ordered defendant Martti to open the shower door and plaintiff was ordered to lie down on the floor and not resist. As the door opened, plaintiff assumed a fetal position, but refused staff efforts to apply leg restraints. Defendant Kettru straightened plaintiff's legs while plaintiff was held stable so that staff could apply the leg restraints. The washcloth was taken away from plaintiff. The washcloth concealed 19 rolled cigarettes and 10 matches wrapped in cellophane. Plaintiff was then escorted back to his cell. Initially, plaintiff refused to allow staff to remove his restraints. The restraints were removed. Misconduct charges were issued for disobeying a direct order and for possession of dangerous contraband.

Defendant nurse Moran went to plaintiff's cell after plaintiff demanded to see health care. Plaintiff was walking slowly, but not limping. Plaintiff was agitated and complained of a sore back and sore legs. Plaintiff also complained that his lip was swollen and bleeding. Defendant

Moran did not see any swelling or bleeding from the lip area and noticed no bruises or abrasions inside the mouth. There were no bruises, abrasions or swelling on plaintiff's body. Plaintiff was referred to the doctor for a follow-up visit and was instructed to contact health services if he had any problems. Plaintiff was then escorted to his cell under his own power. The next day plaintiff complained to the doctor that he was taken down in the shower in an inappropriate manner and his upper back was sore. The doctor could not find anything wrong with plaintiff.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co.*

*v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312, 319 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL

28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

In this case, there is no evidence to suggest that excessive force was used. Plaintiff repeatedly refused to comply with shakedown orders because he knew he would be caught carrying contraband. Defendants had to use force to control plaintiff and to remove the washcloth from his possession. Despite plaintiff's claim, he suffered no physical injury. There exists no documented evidence to support plaintiff's claims. In the opinion of the undersigned, plaintiff's Eighth Amendment claim should be dismissed.

Moreover, in the opinion of the undersigned, to the extent that plaintiff is alleging that defendants took retaliatory conduct against him, his claims must fail. Plaintiff has made claims that he was denied food trays, showers and a transfer to general population. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff was placed on a shower restriction as a result of this incident. Plaintiff missed only four showers over a three week period. One was the result of the restriction and other three were because plaintiff refused to take a shower. On one occasion, plaintiff missed breakfast

because he refused to comply with staff orders to go to the back of his cell so that food tray could be delivered through the slot. Finally, plaintiff has not explained how any of the named defendants were involved in denying his release to general population. In the opinion of the undersigned, plaintiff has not supported his retaliation claims.

Alternatively, it is recommended that plaintiff's monetary damage claims be dismissed under qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An

official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, defendants are

entitled to the defense of qualified immunity because plaintiff cannot establish that defendants violated his constitutional rights.

Accordingly, it is recommended that defendants' motions for summary judgment (Docket #24 and #50) be granted and this case be dismissed in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 12, 2009